UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| ANDRUE JEFFERSON, | Case No. 3:19-cv-00331-RCJ-WGC |
| Petitioner, | |
| v. | ORDER |
| PERRY RUSSELL, et al., | |
| Respondents. | |

Before the court for a decision on the merits is a habeas petition under 28 U.S.C. § 2254 brought by Andrue Jefferson, a Nevada prisoner serving a life term.

**II.   BACKGROUND**

On February 5, 2012, Jefferson was involved in the beating death of Jared Hyde at an outdoor party in Washoe County, Nevada. Tried before a jury in Nevada's Second Judicial District Court with two co-defendants, Jefferson was found guilty of murder in the second degree. After a penalty hearing, he was sentenced to life in prison with parole eligibility after serving a minimum of 10 years.

In deciding Jefferson's subsequent appeal, the Nevada Supreme Court gave the following synopsis of the evidence presented a trial:

> The jury heard testimony that 40 to 60 young people gathered at the Stead race track for a bonfire party. Tyler DePriest brought Jared Hyde to the party in his Dodge Durango. Towards midnight, a fight broke out between two girls. Taylor Pardick tried to break-up the fight but he was

confronted by Jake Graves after he warned one of the girls that he was not afraid to hit her. Pardick did not want to fight with Graves, but several people egged the fight on.

Robert Schnueringer and Andrue Jefferson were among those encouraging the fight. They identified themselves as belonging to a group called "Twisted Minds" or "TM," and they both shouted "TM" and urged Pardick to "rep for TM" by fighting Graves. When Pardick refused to fight, Jefferson reached around Graves and struck Pardick several times to get the fight started. Eric Boatman tried to intercede on Pardick's behalf, but ultimately Graves struck both of them and knocked them to the ground.

After these fights, Hyde headed towards the Durango. He walked alone and said out loud, "This is bullshit. You just knocked out my best friend." Zachary Kelsey, whose friends included Graves and Schnueringer, overheard Hyde and confronted him. Although Hyde's hands were held high, like he did not want to fight, Kelsey struck him twice in the head. Kelsey then grabbed Hyde as he fell and kneed him in the head twice. Zach Clough and Michael Opperman seized and restrained Kelsey, but Kelsey continued to yell at Hyde.

When Hyde picked himself up, he had blood running from his mouth, his shirt was torn, and he looked distraught. He said to DePriest, "Let's go, let's get out of here. I just got rocked," and he continued to move towards the Durango. While Kelsey continued to yell at him, Hyde approached the passenger side of the Durango where he was confronted by Schnueringer and Jefferson. They asked him if he was "still talking smack" and he replied, "No, I'm not, I'm not." Hyde was scared, about to cry, and did not want to be there. He did not have his arms up and he was not defending himself when Schnueringer punched him in the head.

Schnueringer delivered a forceful, knockout punch that caused Hyde's knees to buckle and his body to fall to the ground. Jefferson got in front of Hyde's face, exclaimed, "You got knocked the fuck out," and then delivered a similar punch to Hyde's head. Schnueringer and Jefferson kicked Hyde as he lay on the ground, and Jefferson celebrated by jumping around and saying, "I slept him, I slept him." When Cliffton Fuller checked his friend for a pulse, he felt something at first and then it went away.

Hyde was not breathing when he arrived at the hospital and efforts to resuscitate him failed. The medical examiner, Dr. Ellen Clark, conducted a forensic autopsy of the body. She determined that the manner of death was homicide and the cause of death was subarachnoid hemorrhage due to blunt force trauma. She found five separate areas of bleeding beneath the scalp surface and testified that these injuries were the result of blunt force trauma and they were consistent with being punched or kicked in the head numerous times. She also testified that the first blow to Hyde's head could have been the fatal blow, she could not identify one fatal impact site, and, in her opinion, the multiple injuries to different parts of Hyde's brain were cumulative. Dr. Clark had consulted with Dr. Bennet Omalu during the autopsy. Dr. Omalu is an expert on brain trauma and he testified that each and every one of the blows delivered to Hyde's head contributed to his death due to the phenomenon of repetitive traumatic brain injury.

1  ECF No. 12-27 at 2-4. The Nevada Supreme Court affirmed the judgment of conviction.

2  On March 4, 2015, Jefferson filed a petition for a writ of habeas corpus in the

3  state district court. With the assistance of court-appointed counsel, he filed a

4  supplemental petition. After holding an evidentiary hearing, the court denied habeas

5  relief. Jefferson appealed. On April 16, 2019, the Nevada Court of Appeals entered an

6  order affirming the lower court's decision.

7  This court received Jefferson's federal habeas petition on June 18, 2019. In

8  deciding respondents' motion to dismiss in response to the petition, the court dismissed

9  several claims as not cognizable in a federal habeas proceeding. The court also

10  determined that several other claims had not been exhausted in state court. Jefferson

11  elected to abandon the unexhausted claims and proceed on his remaining claims –

12  Grounds 1(A), 1(B)(1), 1(B)(2), 2(I), and 3(C). The court addresses each of those claims

13  below.

14  **III.    STANDARD OF REVIEW**

15  This action is governed by the Antiterrorism and Effective Death Penalty Act

16  (AEDPA). 28 U.S.C. § 2254(d) sets forth the standard of review under AEDPA:

17  An application for a writ of habeas corpus on behalf of a person in custody
    pursuant to the judgment of a State court shall not be granted with respect
18  to any claim that was adjudicated on the merits in State court proceedings
    unless the adjudication of the claim –
19

20  (1)  resulted in a decision that was contrary to, or involved an
    unreasonable application of, clearly established Federal law, as
    determined by the Supreme Court of the United States; or
21

22  (2)  resulted in a decision that was based on an unreasonable
    determination of the facts in light of the evidence presented in the
    State court proceeding.
23

24  A decision of a state court is "contrary to" clearly established federal law if the state

25  court arrives at a conclusion opposite that reached by the Supreme Court on a question

26  of law (that is, applies a rule that contradicts governing Supreme Court precedent) or if

27  the state court decides a case differently than the Supreme Court has on a set of

28

1   materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An

2   "unreasonable application" occurs when "a state-court decision unreasonably applies

3   the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409. "[A] federal

4   habeas court may not "issue the writ simply because that court concludes in its

5   independent judgment that the relevant state-court decision applied clearly established

6   federal law erroneously or incorrectly." *Id*. at 411.

7        The Supreme Court has explained that "[a] federal court's collateral review of a

8   state-court decision must be consistent with the respect due state courts in our federal

9   system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a

10  'highly deferential standard for evaluating state-court rulings,' and 'demands that state-

11  court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773

12  (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*,

13  537 U.S. 19, 24 (2002) (per curiam)). "A state court's determination that a claim lacks

14  merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on

15  the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101

16  (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court

17  has emphasized "that even a strong case for relief does not mean the state court's

18  contrary conclusion was unreasonable." *Id*. (citing *Lockyer v. Andrade*, 538 U.S. 63, 75

19  (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the AEDPA

20  standard as "a difficult to meet and highly deferential standard for evaluating state-court

21  rulings, which demands that state-court decisions be given the benefit of the doubt")

22  (internal quotation marks and citations omitted).

23        "[A] federal court may not second-guess a state court's fact-finding process

24  unless, after review of the state-court record, it determines that the state court was not

25  merely wrong, but actually unreasonable." *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir.

26  2004), *overruled on other grounds by Murray v. Schriro*, 745 F.3d 984, 999–1000 (9th

27  Cir. 2014).; *see also Miller-El*, 537 U.S. at 340 ("[A] decision adjudicated on the merits in

28

1   a state court and based on a factual determination will not be overturned on factual

2   grounds unless objectively unreasonable in light of the evidence presented in the state-

3   court proceeding, § 2254(d)(2).").

4       Because de novo review is more favorable to the petitioner, federal courts can

5   deny writs of habeas corpus under § 2254 by engaging in de novo review rather than

6   applying the deferential AEDPA standard. *Berghuis v. Thompkins*, 560 U.S. 370, 390

7   (2010).

8   **IV.     DISCUSSION**

9           **A.      Grounds 1(A) and 1(B)(1)**

10      In Ground 1(A), Jefferson alleges his conviction violates his rights under the Due

11  Process Clause because the State presented insufficient evidence to establish beyond

12  a reasonable doubt that he is guilty of second-degree murder. He concedes that he

13  struck Hyde, but contends that he did so only after Schnueringer had knocked Hyde out

14  and that he did not hit Hyde as hard as Schnueringer or punch and knee him as Kelsey

15  had. Jefferson argues that, based on the evidence presented, the State failed to prove

16  malice, which is an element of second-degree murder in Nevada. Jefferson's argument

17  in Ground 1(B)(1) is that there was also insufficient evidence to establish his guilt under

18  an aiding and abetting theory.

19      Jefferson presented his sufficiency of evidence claim to the Nevada Supreme

20  Court in his direct appeal. The Nevada Supreme Court correctly identified the "rational

21  factfinder" standard established in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), as the

22  federal law standard to test whether sufficient evidence supports a state conviction.

23  ECF No. 12-27 at 2. *See Mikes v. Borg*, 947 F.2d 353, 356 (9th Cir. 1991). Under that

24  standard, the court determines "whether, after viewing the evidence in the light most

25  favorable to the prosecution, any rational trier of fact could have found the essential

26  elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (citation

27  omitted).

28

1

2

Relying on the recitation of the evidence excerpted above in Section II., the state supreme court stated:

3

4

5

6

7

8

> We conclude that a rational juror could reasonably infer from this evidence that Jefferson acted with malice when he attacked Hyde and caused his death. *See* NRS 200.020; NRS 200.030(2); *Earl v. State*, 111 Nev. 1304, 1314, 904 P.2d 1029, P.2d 904 1029, 1035 (1995) (second-degree murder based on implied malice does not require an intentional killing but rather a killing under circumstances that show an abandoned and malignant heart). It is for the jury to determine the weight and credibility to give conflicting testimony, and the jury's verdict will not be disturbed on appeal where, as here, substantial evidence supports the verdict. See *Bolden v. State*, 97 Nev. 71, 73, 624 P.2d 20, 20 (1981).

ECF No. 12-27 at 4-5.

9

10

11

12

13

14

15

Because this court must review the Nevada Supreme Court's sufficiency of evidence determination under AEDPA, "there is a double dose of deference that can rarely be surmounted." *Boyer v. Belleque*, 659 F.3d 957, 964 (9th Cir. 2011). That means that even if this court "think[s] the state court made a mistake," the petitioner is not entitled to habeas relief unless the state court's application of the *Jackson* standard was "'objectively unreasonable.'" *Id*.

16

17

18

19

20

21

22

23

In Nevada, "the unlawful killing of a human being … with malice aforethought, either express or implied," is second-degree murder. Nev. Rev. Stat. §§ 200.010, 200.030. Malice is implied "when no considerable provocation appears, or when all the circumstances of the killing show an abandoned and malignant heart." Nev. Rev. Stat. § 200.020. The element of malice distinguishes murder from manslaughter. Nev. Rev. Stat. § 200.040. The testimony presented at trial supports the conclusion that the Nevada Supreme Court's rejection of Jefferson's sufficiency of evidence claim is not an objectively unreasonable application of the *Jackson* standard.

24

25

26

27

Jefferson concedes that he struck Hyde. ECF No. 6 at 7-8. The State presented at least six witnesses who testified that Jefferson hit and/or kicked Hyde without provocation. ECF No. 11-34 at 284; ECF No. 11-35 at 240-41; ECF No. 11-36 at 40-41, 137-39, 232, 281; ECF No. 11-38 at 21-22. Another witness testified about Jefferson

28

1    celebrating that he had knocked Hyde out. ECF No. 11-35 at 175. As noted by the

2    Nevada Supreme Court, the State's medical expert testified that each of the blows Hyde

3    received contributed to his death. ECF No. 11-38 at 83-86. In summary, the evidence

4    established that Jefferson intentionally struck Hyde without provocation and that the

5    impact of the blow (or blows) was at least a partial cause of Hyde's death.  A rational

6    trier of fact could have readily found beyond a reasonable doubt that Jefferson's

7    conduct satisfied the required elements of second-degree murder, either alone or under

8    an aiding and abetting theory.

9           Grounds 1(A) and 1(B)(1) are denied.

10   **B.      Ground 1(B)(2)**

11          In Ground 1(B)(2), Jefferson alleges that the prosecution's presentation of gang-

12   related evidence without advance notice violated his federal right to due process.

13   Jefferson argues that, throughout the trial, the prosecution elicited evidence about

14   Jefferson's and Schnueringer's affiliation with a gang called "Twisted Minds" or "TM,"

15   but failed to establish that "Twisted Minds" was actually a gang or that Jefferson and

16   Schnueringer were gang members. He further argues that State's failure to notify him of

17   its intention to present such evidence deprived him of an opportunity "to prepare for a

18   gang related case and to use in defense gang expert testimony," which was "in violation

19   of his rights to Due Process." ECF No. 6 at 13.

20          Jefferson raised these arguments in his direct appeal to the Nevada Supreme

21   Court. In rejecting the arguments, the Nevada Supreme Court stated as follows:

22              Jefferson contends that the district court erred by admitting gang-
         affiliation evidence. He argues that because the State did not seek a gang
23       enhancement pursuant to NRS 193.168 or file a notice that it would
         present expert testimony to prove that TM was a gang, he did not receive
24       adequate notice that he would have to defend against gang accusations
         and was thereby deprived of a fair trial. He asserts that prejudicial hearsay
25       testimony of his alleged gang affiliation was presented to the jury as a
         result of prosecutorial misconduct and ineffective assistance of counsel.
26       And he claims that this testimony violated NRS 48.045(2) because it was
         evidence of uncharged misconduct that had not been subjected to a
27       hearing pursuant to *Petrocelli v. State*, 101 Nev. 46, 692 P.2d 503 (1985).

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

"We review a district court's decision to admit or exclude evidence for an abuse of discretion." *Mclellan v. State*, 124 Nev. 263, 267, 182 P.3d 106, 109 (2008). The district court conducted a hearing on the defendants' motion to exclude the TM evidence. The State informed the district court that it was prepared to present evidence at a *Petrocelli* hearing, recited the facts in the case, argued that the evidence of who was aligned with TM and whether they were making statements about TM was inextricably intertwined with the facts and circumstances of the case, and asserted that it did not intend to establish that TM was a criminal gang.[1] The defendants acknowledged that the State was not trying to prove a bad act and conceded that the evidence the State sought to admit was res gestae. The district court concluded that the evidence was res gestae and a *Petrocelli* hearing was unnecessary, and it denied the motion.

We conclude that the district court did not abuse its discretion by admitting this evidence, *see* NRS 48.035(3) (res gestae doctrine); *see generally Butler v. State*, 120 Nev. 879, 889, 102 P.3d 71, 78–79 (2004) (discussing the admission of gang-affiliation evidence), and Jefferson has not demonstrated that the prosecutor's conduct constituted plain error, see *Valdez v. State*, 124 Nev. 1172, 1190, 196 P.3d 465, 477 (2008) (reviewing unpreserved claims of prosecutorial misconduct for plain error), and we decline to consider Jefferson's ineffective-assistance claim, see *Rippo v. State*, 122 Nev. 1086, 1095, 146 P.3d 279, 285 (2006) (claims of ineffective assistance of counsel should be raised on a post-conviction petition for a writ of habeas corpus rather than on direct appeal).

—————————————————

[1] The record indicates that after the homicide in this case, the Washoe County Sheriff's Office classified TM as a gang.

ECF No. 12-27 at 5-6.

While the court did not explicitly address the federal law aspect of Jefferson's argument, there is a presumption that the state court adjudicated the federal claim on the merits for the purposes of § 2254(d). *See Johnson v. Williams*, 568 U.S. 289, 299-301 (2013) (discussing circumstances in which a federal claim is presumed to have been adjudicated on the merits notwithstanding the state court's failure to address it).

Federal habeas relief is generally not available to review questions about the admissibility of evidence. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). The Ninth Circuit has held that, on habeas review, federal courts may not interfere with a state evidentiary ruling, but may only consider whether the evidence was so prejudicial that its admission violated fundamental due process and the right to a fair trial. *Fuller v. Roe*, 182 F.3d

1  699, 703 (9th Cir.1999); *Windham v. Merkle*, 163 F.3d 1092, 1103 (9th Cir.1998);

2  *Jeffries v. Blodgett*, 5 F.3d 1180, 1192 (1993).

3        Prior to trial, the trial judge heard argument on whether the State should be

4  permitted to present evidence about the defendants' alleged affiliation with TM. ECF No.

5  11-32 at 10-31. The State sought to introduce the evidence to establish that a group of

6  people at the party, including Jefferson and Schnueringer, were aligned with TM and

7  invoked TM to instigate fighting. *Id*. Several witnesses testified that Jefferson and

8  Schnueringer encouraged Pardick to fight Graves by saying Pardick needed to

9  represent TM. ECF No. 11-34 at 31, 213-14, 288; ECF No. 11-35 at 162, 237, 292 -93;

10  ECF No. 11-36 at 189.

11        The evidence was relevant because it was an important part of the events

12  leading up to Hyde's murder and it established a connection between Jefferson and

13  Schnueringer. The evidence was not presented to create impermissible inferences

14  about Jefferson's character. Thus, the admission of the evidence did not violate

15  Jefferson's right to due process. *See Windham*, 163 F.3d at 1104 (finding that gang

16  evidence was admissible to "demonstrate Windham's motive for participating in the

17  alleged crimes").

18        Ground 1(B)(2) is denied.

19      **C.**     **Ineffective assistance of counsel claims.**

20        In his remaining claims, Jefferson alleges he was deprived of his right to the

21  effective assistance of counsel. To demonstrate ineffective assistance of counsel (IAC)

22  in violation of the Sixth and Fourteenth Amendments, a convicted defendant must show

23  1) that counsel's representation fell below an objective standard of reasonableness

24  under prevailing professional norms in light of all the circumstances of the particular

25  case; and 2) that it is reasonably probable that, but for counsel's errors, the result of the

26  proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–94

27  (1984).

28

1.   Ground 2(I)

In Ground 2(I), Jefferson claims counsel provided ineffective assistance by not presenting a closing argument. He contends that waiving closing argument to prevent the prosecution from making a rebuttal argument can be a reasonable strategic decision, but not in this case where the co-defendants each pointed at the others as the ones responsible for the fatal blows. He argues that "it was critical for [his] counsel to point out to the jury the reasonable doubt that existed from the evidence regarding the strength of the State's case as against [him]." ECF No. 6 at 33. He further argues that counsel should have instructed the jury that accomplice testimony cannot sustain a conviction unless it is corroborated by other evidence.

On appeal in his state habeas proceeding, the Nevada Court of Appeals correctly identified the holding in *Strickland* as the standard by which to assess Jefferson's IAC claims. ECF No. 13-29 at 2. The Nevada Court of Appeals rejected this claim as follows:

> Jefferson argued his trial counsel was ineffective for waiving the opportunity to present a closing argument. Jefferson failed to demonstrate his counsel's performance was deficient or resulting prejudice. At the evidentiary hearing, counsel testified he had prepared to present a closing argument, but believed the State's closing argument did no damage to Jefferson's defense. Counsel also testified he had previously observed the prosecutor's rebuttal arguments and was concerned that the prosecutor would make a persuasive rebuttal argument in this matter. Counsel further testified he felt confident with the case the defense had presented at that point. Counsel testified that for those reasons, he made the tactical decision to waive the defense closing argument in order to avoid a rebuttal argument from the State. "Tactical decisions are virtually unchallengeable absent extraordinary circumstances," *Ford v. State*, 105 Nev. 850. 853, 784 P.2d 951, 953 (1989), and the district court found Jefferson did not demonstrate his counsel's decision to waive closing argument amounted to an extraordinary circumstance. Substantial evidence supports the district court's decision. *See Bell v. Cone*, 535 U.S. 685, 701-702 (2002) (explaining that it was not objectively unreasonable for a defense counsel to make a tactical decision to waive closing argument out of concern that the prosecutor would make a persuasive rebuttal argument).
>
> The district court also found Jefferson did not demonstrate a reasonable probability of a different outcome had counsel presented a closing argument. The district court found compelling evidence of Jefferson's guilt had been presented at trial, including multiple witnesses that identified him as one of the persons who struck the victim. The record

supports the district court's findings in this regard. Therefore, we conclude the district court did not err by denying this claim.

*Id*. at 3-4.

The Court of Appeal's factual findings are supported by the transcript of the evidentiary hearing. ECF No. 13-13 at 109-147. Jefferson's trial counsel, Richard Molezzo, explained in his testimony that he anticipated that the initial closing argument by the relatively inexperienced associate district attorney, which he felt was lackluster, would be followed by a very aggressive rebuttal argument by the lead district attorney. *Id* at 111-16, 134-35. He further testified that he was concerned about the latitude and deference that the trial judge had granted the lead district attorney throughout the trial. *Id*. Accordingly, he decided to prevent the State from presenting a rebuttal argument and rely on the strength of his cross-examination of the State's witnesses and the testimony of the defense witnesses he had called. *Id*.

*Strickland* cautions that a reviewing court must indulge a "strong presumption" that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689. In addition, the Supreme Court has accorded great deference to "counsel's tactical decisions in [the] closing presentation ... because of the broad range of legitimate defense strategy at that stage." *Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) "Indeed, it might sometimes make sense to forgo closing argument altogether." *Id*. (citing *Bell*, 535 U.S. at 701–02). Given these precedents, the Nevada Court Appeal's determination that counsel was not ineffective was a reasonable application of clearly established Supreme Court law.[1]

The state court's prejudice determination was also reasonable. As noted above, the evidence strongly supported a finding that Jefferson acted with malice in striking Hyde. In addition, there was no evidence that Hyde had provoked him. Thus, there is

---

[1] Jefferson's contention regarding counsel's failure to instruct the jury regarding accomplice testimony is a non-starter given that his conviction was based on the testimony of several witnesses who were not his accomplice.

1  not a reasonable likelihood that a closing argument from Molezzo would have convinced

2  the jury to opt for manslaughter rather than murder. *See* Nev. Rev. Stat. §§ 200.040,

3  200.050. The jury chose the lesser of the two possible murder verdicts.

4       Ground 2(I) is denied.

5           2.  Ground 3(C)

6       In Ground 3(C), Jefferson claims his trial counsel was ineffective for failing to

7  investigate and present evidence regarding an alternative suspect, Emilio Powell. He

8  alleges that Powell "bears a striking resemblance" to him and that Powell made

9  incriminating statements to the police. According to Jefferson, Powell initially lied to the

10  police about not being at the party then later recanted and admitted to being there and

11  shouting "TM" and "to being good friends with Mr. Schnueringer and standing beside

12  him when Mr. Hyde was hit." ECF No. 6 at 81.

13       In addressing this claim in Jefferson's state habeas proceeding, the Nevada

14  Court of Appeals held as follows:

15           Jefferson argued his trial counsel was ineffective for failing to
16  investigate a potential witness, Emilio Powell, who had been present when
the fight occurred. Jefferson contended he and Powell resembled one
17  another, it was possible Powell actually committed the crime, and that
witnesses had mistakenly identified Jefferson as a participant in the fight
18  due to their resemblance. Jefferson failed to demonstrate his trial
counsel's performance was deficient or resulting prejudice.

19           The record in this matter reveals that Jefferson was identified by
20  multiple witnesses as a participant in the altercation that resulted in the
victim's death. Jefferson speculates Powell could have been the person
21  who actually committed the crime, but mere speculation is not sufficient to
demonstrate reasonably diligent counsel could have undertaken an
investigation that would have resulted in different identification testimony
22  by the eyewitnesses to the crime. Accordingly, Jefferson failed to
demonstrate his counsel's performance fell below an objective standard of
23  reasonableness. In addition, given the multiple witnesses who identified
Jefferson as one of the persons that struck the victim, Jefferson failed to
24  demonstrate a reasonable probability of a different outcome had counsel
undertaken additional investigation. Therefore, we conclude the district
25  court did not err by denying this claim without considering it at the
evidentiary hearing. *See Hargrove v. State*, 100 Nev. 498, 502-03, 686
26  P.2d 222, 225 (1984) (explaining that a petitioner is only entitled to have a
claim considered at an evidentiary hearing if the claim is supported by

27

28

1    specific allegations not belied by the record, that if true, would entitle him
     to relief).

2    ECF No. 13-29 at 4-5.

3        This decision was neither an unreasonable application of the *Strickland* standard

4    nor based on an unreasonable determination of the facts. As discussed above,

5    numerous witnesses identified Jefferson as the one who struck Hyde. At least two

6    witnesses who were familiar with Powell testified that it was Jefferson not Powell who

7    struck Hyde. ECF No. 11-36 at 282; ECF No. 11-37 at 50-51. Jefferson has presented

8    no credible evidence to this court or the state courts that Powell struck Hyde or that

9    witnesses mistakenly identified Powell as Jefferson. Thus, he has not established that

10   counsel was ineffective for not investigating whether Powell was the actual perpetrator

11   or for not presenting evidence to support such a theory. Accordingly, this court must

12   defer to the decision of the Nevada Court of Appeals.

13       Ground 3(C) is denied.

14   **V.      CONCLUSION**

15       For the reasons set forth above, Jefferson's petition for habeas relief will be

16   denied.

17                       *Certificate of Appealability*

18       This is a final order adverse to a habeas petitioner. As such, Rule 11 of the Rules

19   Governing Section 2254 Cases requires this court to issue or deny a certificate of

20   appealability (COA). Accordingly, the court has *sua sponte* evaluated the claims within

21   the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v.*

22   *Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

23       Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner

24   "has made a substantial showing of the denial of a constitutional right." With respect to

25   claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists

26   would find the district court's assessment of the constitutional claims debatable or

27   wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463

28

1    U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable

2    jurists could debate (1) whether the petition states a valid claim of the denial of a

3    constitutional right and (2) whether the court's procedural ruling was correct. *Id*.

4         Having reviewed its determinations and rulings in adjudicating Jefferson's

5    petition, the court declines to issue a certificate of appealability for its resolution of any

6    procedural issues or any of Jefferson's habeas claims.

7         IT IS THEREFORE ORDERED that Jefferson's petition for writ of habeas corpus

8    (ECF No. 6) is DENIED. The Clerk shall enter judgment accordingly and close this case.

9         IT IS FURTHER ORDERED that a certificate of appealability is

10        denied.

11        DATED: January 13, 2022.

12        _____
          UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28